BEFORE THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| ROSA I. ARELLANO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| - v. - | } | Civil Action No: 2:24-cv-26 |
| | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S INITIAL COMPLAINT OF DISCRIMINATION

### A. *Introduction*

1.    *Comes now*, the Plaintiff, Rosa I. Arellano, through her undersigned counsel, to

file her initial Complaint of discrimination pursuant to *Title VII of the Civil Rights Act of*

*1964* and the United States ("U.S.") Merit Systems Protection Board's ("Board") Final

Order ("FO") dated January 24, 2024.  (*See* Ex. 1, copy of Board's FO).  Effectively,

Plaintiff has thirty (30) days, up to and including Friday, February 23, 2024, to file her

instant Complaint, to wit, the Plaintiff alleges the following:

### B. *Jurisdiction and Venue*

2.    Paragraph 1 is hereby incorporated directly, indirectly and/or by implication where

necessary in the reading and interpretations of the following allegation(s):

3.    Pursuant to *Title 42 USC § 2000e-5(f)* this Court is vested with subject matter and

*in personam* jurisdiction.

4.    Venue is proper before this Court because all the Plaintiff's claims arose while she

was in Eagle Pass, Texas, which is located within the Western District of Texas, Del Rio

Division.

## C. *Parties*

5.     Paragraphs 1 through 4 are hereby incorporated directly, indirectly and/or by implication where necessary in the reading and interpretations of the following allegation(s):

6.     Plaintiff Rosa I. Arellano is a Hispanic Mexican American female over the age of 40 years old who suffered a debilitating on the job injury ("OJI") in September 2013, while on duty as a Customs and Border Protection Officer ("CBPO").  Plaintiff can be served with process, motions, and pleadings through her undersigned Attorney Lorenzo W. Tijerina local office located at 1911 Guadalupe, San Antonio, Texas 78207, telephone number (210) 231-0112.

7.     Defendant, the Hon. Alejandro Mayorkas, Secretary of U.S. Department of Homeland Security ("DHS") located in Washington, DC 20528, and can be served through its counsel the Attorney General of the United States Merrick Garland located in care of the U.S. Department of Justice, 950 Pennsylvania Ave., NW, Room No. 4400, Washington, DC 20530, and local through the local Office of the US Attorney's Office, located at 111 East Broadway, Room A306, Del Rio Texas 78840.

## D. *Operative Facts*

8.     Paragraphs 1 through 7 are hereby incorporated directly, indirectly, and/or by implication where necessary in the reading and interpretations of the following allegations:

9.     On or about September 23, 2013, the Plaintiff submitted a request for

temporary light duty along with a note from her medical provider which listed medical restrictions including no lifting over 10 lbs., no squatting, no twisting, no stooping, no bending and no wearing the uniform utility belt. On September 23, 2013, the Defendant denied the Plaintiff's request. The Defendant's management ignored the Plaintiff's medical restrictions. The Plaintiff, though in constant pain, continued to work her regular duties and was also forced to work overtime. When Plaintiff's condition was furthered aggravated due to her wearing her uniform utility belt, she would remove her belt to alleviate the pain she was suffering. Approximately, a week later, Proposing Official (PO) John Brandt, ordered Plaintiff to go home when PO Brandt saw Plaintiff not wearing her utility belt.

10.     On or about October 9, 2013, in fear of losing her job as a Custom and Border Protection Officer ("CBPO") the Plaintiff submitted medical documentation from her medical provider where the doctor permitted Plaintiff to return to work with no restrictions. She was allowed to return to full duty and continued to work full time and overtime without any restrictions, notwithstanding the pain the Plaintiff was suffering.

11.     On or about **December 6, 2015**, Plaintiff suffered an additional OJI and thereafter she submitted a request for temporary light duty which was approved by PO Brandt on December 10, 2015.

12.     On or about December 21, 2015, PO Brandt prohibited the Plaintiff from working the Holidays of December 24 and 25, 2015 due to Plaintiff's light duty status. However, another younger female officer, Roxana Maldonado Guerra, who was assigned to the same work unit and was also on temporary light duty was allowed to work the December

Holidays.  When Plaintiff returned from the Holidays, she contacted Assistant Port Director (APD) Pete Macias *via* email, and he claimed that he was informed that Plaintiff was sick.

13.    On or about March 4, 2016, Plaintiff was denied the opportunity to conduct classroom training classes due to her temporary light duty; yet other lower ranking officers who were also on temporary light duty status; CBPO Carlos Ventura (younger male) and CBPO R. Rivera (younger male) were allowed to work with the Training Department to conduct training.  A portion of Plaintiff's job description (Core document – job description) requires her to conduct training of lower level CBP Officers as part of her essential duties.  Plaintiff has an email posted by Chief John Alanis whereby Plaintiff is denied the opportunity to conduct training.  Plaintiff had the Union president inquire on a separate occasion as to her being barred from conducting training and the Union president was informed that management was concerned about the Plaintiff's safety.  Plaintiff's only restriction at the time was that she could not wear her utility belt.  Plaintiff planned to conduct one to two hours of classroom training on the subject of the computer systems.  Plaintiff did not request permission to conduct defensive tactics or firearms training.  In April 2016, management moved Plaintiff out of her work unit.  After her unrequested transfer, Plaintiff requested a meeting with PO Brandt to discuss Plaintiff's temporary light duty situation.  During the meeting, PO Brandt informed the Plaintiff that it was time for her to go back to her old unit stating, "... so, you can actually work now."  During the meeting, PO Brandt also made it a point to inform Plaintiff that he (PO Brandt) also had multiple back issues himself.  PO Brandt stated that he could offer

Plaintiff a position as a CBP Technician but as a GS-7 and her pay would drastically be reduced.

14.    In May 2016, Plaintiff was denied the opportunity to participate in "Bring Your Child to Work Day".  APD Macias appeared very nervous when another female officer, Ethelvina Felan, asked APD Macias why not, and he stated that Plaintiff could not be seen in public in uniform without her utility belt.  Other officers have conducted outreach while in public without their utility belt.  Plaintiff has previously engaged in other outreach programs when she was in her last trimester of her pregnancy without her utility belt.

15.    On or about June 1, 2016, Plaintiff reported to APD Macias that short notice changes were being made to Plaintiff's schedule so that she could cover the unit from which she was removed.  This matter was addressed with APD Macias *via* email.

16.    On or about June 28, 2016, Chief Robert Vidal called Plaintiff into his office towards the end of her shift, and served her with a Letter Record of Counseling (LRC) which alleged that Plaintiff failed to follow APD Macias' instructions.  Chief Vidal was confused in regard to why APD Macias was issuing Plaintiff a Letter of Counseling (LOC).  Plaintiff asked Chef Vidal why she was being issued the LOC.  Chief Vidal responded that he felt that Plaintiff was stuck between a "rock and hard place".  After she left Chief Vidal's office, Plaintiff contacted the Union, and it became involved and eventually had the LOC removed from the Plaintiff's file on or about August 5, 2016. APD Macias' excuse was that it was a miscommunication.  At this point, Plaintiff could have filed a grievance; however, Plaintiff was so negatively impacted emotionally by the

LOC that she immediately noticed that her work performance began to deteriorate to that of a regular employee when she had always excelled.  The LOC affected Plaintiff tremendously because she had never been accused of any wrongdoing in over 20 years of being in the workforce.  Plaintiff's depression and anxiety reached its highest point to a degree that she had recurrent post-traumatic stress disorder (PTSD) episodes.  Plaintiff began having crying spells even when she was out shopping, driving, resting, at work, etc.  Plaintiff's PTSD is grounded on management's mistreatment and Plaintiff's medications had to be increased due to increase in pain.

17.     On or about July 25, 2016, Plaintiff was issued a request for Administratively Acceptable Medical Documentation ("AAMD"), management alleged that Plaintiff had been restricted from performing her duties all along since September 2013.  Plaintiff felt that she was being intentionally exposed to a hostile work environment due to her age, physical condition, and female gender.  Other officers such as Supervisor (SCBPO) Juan Rivera (male) who had a medical condition which causes him to repeatedly fall asleep on the job; CBPO Dan Guerrero (male) sustained an off duty injury in a motorcycle accident approximately nine years earlier and visibly has weakness in one hand; CBPO Magaly Tapia (younger female) had recently been placed on temporary light duty due to an illness which she stated require stomach surgery; CBPO Roxana Maldonado Guerra (younger female) had been on temporary light duty due to voluntarily (not an on the job injury) gastro bypass surgery for losing weight; and Supervisory CBPO Reynaldo Chavarria (younger male) who sustained an off duty injury to his back and had surgery several months earlier.  None of these individuals had been harassed by management in

regards to their "medical" condition(s). There is serious doubt that these officers were fully capable of being medically and physically capable of performing the duties of their position safely and efficiently without endangering their health and the safety of coworkers, or members of the traveling public.

18.    On or about **August 12, 2016,** Plaintiff contacted Alicia M. Davila, Diversity and Civil Rights Officer, and reported how Plaintiff believed she was being discriminated due to her sex, age, and disability and intentionally creating a hostile work environment against her. Plaintiff reported the LRC and the issuance of a request for AAMD by the Defendant.

19.    On or about **August 18, 2016**, Plaintiff requested permission from Chief Vidal to speak to the Defendant's Equal Employment Opportunity Unit (EEO). Chief Vidal authorized Plaintiff to contact the Defendant's EEO counselor *via* phone during work hours. Plaintiff spoke to Ms. Anna Measles, EEO Officer/Specialist *via* telephone. Plaintiff reported discriminatory activity to include issuance of LRC and APD Macias' Request for AAMD. Subsequently, Plaintiff was informed by Ms. Measles that since the LOC was removed from Plaintiff's personnel file, she could not use it anymore to support her allegation. Plaintiff advised Ms. Measles how the LOC had affected Plaintiff emotionally and her depression and anxiety had become worse.

20.    On or about August 21, 2016, Plaintiff submitted the requested AAMD to Chief Alanis. He stated to Plaintiff that only PO Brandt would see the contents of Plaintiff's medical documentation in order for him to make a determination.

21.    On or about September 1, 2016, Plaintiff submitted a memo to APD Macias

requesting a formal investigation due to the fact that Plaintiff felt that the Defendant was in violation of mishandling her medical records. Plaintiff discovered that Chief Alanis had emailed Plaintiff's medical documentation to CBP Technician Leticia Sanchez. Plaintiff also observed that her medical records along with other officers' medical records were not properly handled.

22.    On or about September 6, 2016, Plaintiff was served with a notice to report for a fitness for duty examination (FFDE) in Del Rio, Texas on September 21, 2016. Union president CBPO Miguel Flores was present when the Plaintiff met with APD Macias' at his office. Plaintiff was not advised/warned that a summary of her medical condition which included diagnosis and prognosis of her back and neck issues was going to be read out loud which she believes is a violation of her privacy pursuant to *Title 5 USC§ 552a* and the *Rehabilitation Act.*

23.    On or about September 9, 2016, Defendant's management refused to participate in alternative dispute resolution (ADR), a notice of right to file (NORTF) was issued *via* email.

24.    On or about September 21, 2016, Plaintiff reported for the FFDE. She was instructed to fast for at least 12 hours. Plaintiff fasted for about 16 hours and was at the medical facility for an additional 3 hours. Medical personnel from the clinic had Plaintiff complete a medical questionnaire, draw blood, and collected urine samples because they appeared not to know why the Plaintiff was there. Plaintiff was released. Plaintiff went to the restroom before returning to Eagle Pass and became injured when she fell unconscious. She aggravated her preexisting neck injury which caused further damage to

her cervical injuries.

25.    On or about **September 23, 2016**, Plaintiff formally submitted a DHS Form 3090-1, Individual Complaint of Employment Discrimination.

26.    Also on September 23, 2016, Plaintiff reported the September 21, 2016 injury to APD Macias and submitted a CA-l to him since he was the individual/manager who ordered the Plaintiff to report for the FFDE.

27.    On or about September 26, 2016, Plaintiff contacted APD Macias again and informed him that Plaintiff was in pain, and she requested to be provided with the required Office of Workers' Compensation Program (OWCP) forms so she could seek medical attention.  APD Macias took over 24 hours to get SCBPO Luis Rodriguez to provide Plaintiff's husband with the required/requested form CA-16.  Plaintiff's understanding is that APD Macias should have provided Plaintiff with the CA-16 form within 4 hours of her request.

28.    On or about September 29, 2016, Plaintiff was examined by orthopedic specialist, Dr. Anthony Owusu, who issued Plaintiff an OWCP form which prohibited her from returning to work from September 29, 2016, to October 6, 2016 due to her medical condition.

29.    On or about September 30, 2016, Plaintiff provided SCBPO Luis Rodriguez the OWCP claim forms and medical documentation to be forwarded up through the chain of command.

30.    On or about October 4, 2016, Plaintiff was served by Chief Michael Mcgehee at Plaintiff's home late evening with a letter ordering Plaintiff to report for a FFDE. Plaintiff

advised Chief Mcgehee that she (Plaintiff) was restricted by her doctor to not return to work and that she had provided the POE with a copy of the medical documentation.

31.    On or about October 5, 2016, Plaintiff contacted Union President Miguel Flores and he informed the Plaintiff that he tried to have management postpone the FFDE, to no avail.  Flores stated that the Defendant's officials stated that the Defendant had already paid thousands of dollars for the examination.

32.    On or about October 6, 2016, Plaintiff drove herself to the medical facility and went through the medical examination.  Plaintiff went against her doctor's orders because she was in fear of being removed since the letter served by Chief Mcgehee stated that Plaintiff could be removed from her position if she did not report for the FFDE.  She left the medical facility in greater pain since she was required to do bending at the waist and moving of her neck by the attending physician.

33.    On or about October 31, 2016, Plaintiff saw one of her OWCP treating physicians, and she was cleared to return back to work on light duty beginning November 1, 2016.

34.    On or about November 1, 2016, Plaintiff reported for work at 08:00 hours, and at approximately 09:30 hours Chief Alanis stormed into Plaintiff's office and ordered all who were present to leave the office immediately and he proceeded to close the Office door.  The individuals present and ordered to leave were SCBPO Odile Sanchez, CBPO Adrianna Lopez, a newly hired CBP Technician, and an IT worker.  After Chief Alanis and Plaintiff were alone, he confronted Plaintiff in a very aggressive and intimidating manner.  He invaded Plaintiff's personal space and even took off his glasses to address her.  Chief Alanis ordered Plaintiff to leave the facility because she did not have

authorization from PO Brandt to be at the POE.  Plaintiff told Chief Alanis that she was

told that she only needed to bring something from her treating doctor so she could return

to work.  Plaintiff explained to Alanis that Plaintiff had been trying to make contact with

someone from her chain of command so she could provide them with the doctor's note.

Plaintiff reached out her arm to retrieve the doctor's note without turning her head around

because she was not comfortable at how close Chief Alanis was to her.  Chief Alanis then

stepped back away enough and proceeded to read the information.  He then called

SCBPO Luis Rodriguez from one of the office phones and told him to provide Plaintiff

with the required form(s).  Plaintiff was ordered to use continuation of pay (COP) which

she thought was not right since she was already cleared by a her physician to return to

work on light duty.  Plaintiff also stated to Chief Alanis that Plaintiff needed some time

to stay in her office because she had to forward requested information to the EEO

investigator.  Plaintiff stated that it was her understanding that she had the right to use

official time for EEO matter.  Chief Alanis paused for a moment and stated that Plaintiff

could stay to take care of the matter and then she would have to leave immediately.

35.     On or about November 2, 2016, Plaintiff was allowed to return to work and she

posted an email to her immediate supervisor, Chief Robert Vidal.  Plaintiff requested a

meeting so Chief Vidal could tell Plaintiff what would be her specific duties since she

was back on temporary light duty.  Chief Vidal did not reply to Plaintiff's email, she went

ahead and stopped by Chief Vidal's office before Plaintiff left for the day.  Chief Vidal

agreed to meet with Plaintiff the following day, but Plaintiff noticed that Chief Vidal

failed to provide Plaintiff a specific time.  Plaintiff also advised Chief Vidal that Plaintiff

had submitted a CA-l for the OJI of October 6, 2016 and that she had routed the CA-1 to

Chief Vidal since he was Plaintiff's immediate supervisor.

36.    On or about November 3, 2016, at the beginning of her shift Plaintiff was ordered

to report to PO Brandt where she was served with a FFDE Option Letter and ordered to

leave the POE.  The Option Letter served by PO Brandt upon Plaintiff contained several

discrepancies: dates were changed on her medical examination and history report that she

had originally signed on the first part of her FFDE, on September 21, 2016, without her

consent; date was changed on multiple pages without Plaintiff's authorization from

September 21, 2016 to October 6, 2016.  The Defendant's claims that Plaintiff filled out

and completed the medical examination and history report on October 6, 2016, is false.

To illustrate, Dr. Grandemo, the Defendant's physician, stated that Plaintiff was in a

depressed mood and exhibited very little speech at her medical examination.  Moreover,

at another physical examination, Plaintiff was in extreme pain and the examining

physician, Dr. Gonzalez also a Defendant's physician, kept giving Plaintiff his back so he

was not able to hear her responses when she would elaborate.  Plaintiff was told that she

was now on paid Administrative Leave (AL).  Plaintiff was ordered to report to work *via*

the telephone to Chief Alanis every day and that Plaintiff was to not leave her home since

she was on pay status.  The letter was not read to Plaintiff.  She just skimmed through it

because she was not able to concentrate since she had just taken her medications which

cause her to be extremely drowsy for short periods of time.  Plaintiff recalls asking PO

Brandt and his witness Chief John Alanis questions about the letter, and they were not

able to answer, they advised Plaintiff to contact Labor and Employee Relations ("LER")

Specialist Tiffany Robinson.  Plaintiff contacted Ms. Robinson later that day, and she was not able to answer Plaintiff's questions.  Ms. Robinson forwarded Plaintiff's reading materials on Disability Retirement that Plaintiff could have easily obtained from the internet.

37.    On or about November 7, 2016, Plaintiff was ordered to report to the POE and meet with Chief Alanis.  He issued Plaintiff a letter which stated that she was on AL Monday-Friday 0800-1600 hours.  The requirements for AL were explained to Plaintiff on November 3, 2016 so she stayed home and reported to work on the following Sunday (November 6, 2016).  Plaintiff was ordered in the letter to report at 0800, 1200, and 1600 hours to the Operations Center which is manned by regular officers.  She requested to be able to report directly to a duty Chief or other supervisors instead of regular officers.  She was denied her request by Chief Alanis and was ordered to telephone the Operations Center.  Plaintiff reported to a CBPO at the Operations Center as instructed by Chief Alanis.

38.    On or about November 8, 2016, Plaintiff requested an extension on her Options Letter and to be able to report to a Chief instead of a CBPOs at the Operations Center *via* email to APD Macias since Plaintiff still required time to take MRIs and go over findings with her doctors in regards to her recent OJI.

39.    On or about November 8, 2016, the LER Specialist stated in an email that the notice issued to Plaintiff clearly stated for her to report to Chief CBPO.  Plaintiff was left more confused because at this point she did not understand which letter had the final say. It appears that management failed to advise the LER that Plaintiff had been issued

another notice the following day which ordered her to report to the Operations Center, or perhaps the LER was trying to cover for the POE and making it seem like Plaintiff had misunderstood.

40.     On or about November 9, 2016, since Plaintiff was prohibited from going to the POE, she inquired *via* email to APD Macias in regards to Plaintiff being able to take care of work related matters such as turning over case files to the other members of her work unit personnel.  It should be kept in mind that Plaintiff worked as an Enforcement Officer, and some of her basic duties included handling criminal investigations that might require a suspect/subject having to go to federal court.  Plaintiff was also involved in investigating immigration cases that involve subjects having to be served with a Notice to Appear ("NTA") before an Immigration Court.  Plaintiff's duties involve handling important case files secured under lock and key *via* Defendant's policies.  Plaintiff was concerned with not missing Court hearings and not completing the mission to which she was assigned.

41.     On or about November 9, 2016, Plaintiff's request for an extension was denied by LER Specialist Robinson.  Which confused Plaintiff because she did not know if Ms. Robinson had the final say so or if it was either PO Brandt or APD Macias.  Ms. Robinson claims that Plaintiff's OWCP injury had nothing to do with her FFDE.

42.     On or about November 9, 2016, Plaintiff was informed by Medical personnel from Dr. A. Owusu's Office that a CBP Nurse has been calling and requesting dates of Plaintiff's appointments and medical records.  Plaintiff had previously agreed for a CBP Nurse to go over her medical records so a decision could be made in regards to Plaintiff's

request for an extension of light duty. Plaintiff did not consent for the CBP Nurse to obtain Plaintiff's medical records directly from her doctors. Plaintiff consented for her medical records to be obtained in connection with her FFDE; but, never consented for her medical records involving her OWCP claim to be requested *via* telephone by the Defendant. Plaintiff's understanding is that she is required to submit authorization forms to the DOL which the Defendant then submits a request for release in writing. Effectively, the Defendant bypassed its privacy requirements as provided by the *Privacy Act of 1974*, at *5 USC § 552a*, which **establishes a code of fair information practices** that govern the collection, maintenance, use, and dissemination of information about individuals that is maintained in systems of records by federal agencies.

43.    On or about November 10, 2016, Plaintiff posted an email to APD Macias inquiring if Plaintiff was to be compensated for the prior Sunday, November 6, 2016. Plaintiff had spoken to APD Macias *via* telephone previously on November 8, 2016, and explained to him that when she was served with notice on November 3, 2016 and that PO Brandt stated that Plaintiff was on AL that she would be working her normal schedule of 0800-1600 hours but from home. It was never explained to Plaintiff that her schedule would change from Sunday- Thursday to Monday-Friday. The first that Plaintiff heard of such a change was on November 7, 2016. Plaintiff reported *via* telephone at 0800, 1200, and 1600 hours on Sunday November 6, 2016, and stayed home as ordered. As of today, APD Macias has not provided a response in regard to Plaintiff being compensated for Sunday, November 6, 2016.

44.    On or about November 14, 2016, Plaintiff requested clarification *via* email from

LER Specialist Robinson concerning Plaintiff being able to mail her response in regards to the Options Letter on date of deadline.  Plaintiff understood that one of her options for responding was that she could mail her decision *via* mail to LER Specialist Robinson at her work address listed.  Plaintiff explained that she had attempted to get a time for being able to report from APD Macias, and Plaintiff had not received a response.  Plaintiff stated to LER Specialist Robinson that Plaintiff did not want to risk not meeting the deadline so she would be mailing her response on date of deadline which was November 15, 2016.  LER Specialist Robinson replied that Plaintiff had to contact APD Macias for a reporting time and instructed Plaintiff to submit her documents.  Specialist Robinson stated that if Plaintiff mailed the documents on November 15, 2016 then she would not be compliant.

45.    On or about November 15, 2016, Plaintiff reported to the POE and submitted documents concerning her Options Letter, and she received an email confirmation from LER Specialist Robinson.

46.    On or about November 21, 2016, APD Macias posted an email to Plaintiff in regards to a work related matter, Plaintiff replied stating that she did not know the answer and that she was on AL the entire week.

47.    On or about November 29, 2016, Plaintiff reported to the POE and was issued a notice of proposed removal.  The Notice was issued by PO Brandt and served upon Plaintiff by APD Pete Macias with Union President Miguel Flores as a witness.  Plaintiff inquired about her case files and other work related matters, she was instructed that she was no longer on work status so that she would be turning over all her work materials on

her last day.  Plaintiff asked if she would literally just hand over files without any explanation, APD Macias replied "Yes".  Union President Miguel Flores inquired about Plaintiff being afforded official time in order to reply to the Notice, APD Macias agreed that Plaintiff would just have to request it as needed.  Plaintiff inquired about having to continue reporting to a Duty Chief and APD Macias responded, "Yes."

48.     On November 29, 2016, PO Brandt grounded his removal of Plaintiff on the following:

> This is a notice of proposed non-disciplinary adverse action issued in accordance with Title 5 of the Code of Federal Regulations, Part 752.  In order to promote the efficiency of the Service, it is proposed to remove you from your position as a CBPO and the Federal Service.... This proposal is based on the following Charge listed below:
>
> BACKGROUND: Since December 2015, you have been on light duties (sic) with the restrictions due to your back condition(s). Due to the length of time on light duties (sic) and concern for your health, by letter dated July 25, 2016, you were instructed to submit an administratively acceptable medical report from your medical provider. Based upon your medical provider transcribed summary report of your diagnosis and prognosis concerning your visit on August 5, 2016, you were ordered to undergo a fitness for duty examination. In compliance with that letter, on September 21, 2016, you underwent only the blood and urine portion of the general medical examination at Ascend Family Wellness Care; and the general medical examination portion of your fitness for duty was at Maverick County Family Medical Center on October 6, 2016. The general medical examination was performed by Frank H. Gonzalez III, M.D. Danielle Grandrimo, M.D., who is the reviewing physician provided her conclusions in a report dated October 24, 2016.

## E.  *Procedural History*

49.     Paragraphs 1 through 48 are hereby incorporated directly, indirectly, and/or by implication where necessary in the reading and interpretations of the following allegations:

50.    On **September 23, 2016**, Plaintiff filed her initial complaint of discrimination before the Defendant.  The Defendant accepted Plaintiff's complaint for investigation on **November 21, 2016**.  The Defendant's acceptance letter was executed by Defendant's employee Richard Ebert, EEO Investigator Privacy and Diversity Officer, CBP.  Also on September 23, 2016, Plaintiff formally filed a Defendant's Form DHS Form 3090-1, *Individual Complaint of Employment Discrimination*.  Additionally, Plaintiff also reported a September 21, 2016 injury to APD Macias and submitted a CA-l to him since he was the manager who ordered the Plaintiff to report for the FFDE.

51.    On December 5, 2016, Ms. Robinson email the Plaintiff and informed her that her oral reply would be heard by Assistant Director of Field Operations (ADFO) Frank Longoria on December 20, 2016.

52.    On December 20, 2016, upon arriving for her oral reply, the Plaintiff formally submitted her written reply to ADFO Longoria who also heard the Plaintiff's oral reply. The substitution of Longoria for Higgerson was not formally cited in the Agency's Notice of removal **nor did Longoria submit a formal decision or recommendation mandated by** *5 C.F.R. § 752.404(c)(2)*].

53.    However, on or about **February 14, 2017**, Deciding Official (DO) Higgerson issued his decision without providing the Plaintiff the benefit of hearing her oral reply personally.

> You were notified of the opportunity to submit a written and/or oral reply to the proposed action.  Your oral reply and written reply were submitted on December 20, 2016.  I have given full consideration to the entire case file, including the charge cited in the proposal letter, the material relied upon in proposing this action, as well as your oral and written replies.

I considered that you have been on light duties since December 2015, with the restrictions due to your back condition(s).  I also considered the medical standards and physical requirements associated with your weapon-carrying position as a.CBP Officer, as well as the physical demands (Factor 8) described in your position description.  As a CBP Officer, you must be able and prepared to quickly defend yourself or others from physical attacks at any time, without warning, and use firearms in accordance with the CBP Use of Force Policy.

I took into account that on November 15. 2016, you elected to be considered for reassignment and submitted a completed Optional Application for Federal Employment (OF-612) for another available position at Eagle Pass Port of Entry (POE) for which you qualify and able to perform within the noted restrictions.  On November 17, 2016, the Agency conducted a job search based on your qualifications for a position at Eagle Pass POE.  You met the qualifications of a CBP Technician position; however, the job search yielded negative results, meaning that there were no such positions available.

I further took into consideration that in your oral and/or written reply, you did not present any new medical documentation to indicate if or when your medical condition is expected to improve.  Therefore, I have absolutely no credible indication that your medical condition from which you suffer will improve in the foreseeable future to where you will be able to safely and efficiently perform the essential functions as a CBP Officer without hazard to yourself or others.  Finally, I considered that U.S. Customs and Border Protection is a seven (7) day per week, twenty-four (24) hour per day operation.  The agency depends heavily on all of its employees to be ready, [sic] willing and able to perform the full scope of duties on a full-time basis.  The fact that you have been unable to perform the full scope of your duties for more than a year, and there is no end in sight to your medical restrictions, has a direct negative impact on the efficiency of the agency.  After careful deliberation and review of the evidence presented before me, it is my decision to terminate your employment with U. S. Customs and Border Protection.  This action is taken for just and sufficient cause in order to promote the efficiency of the Service.  Accordingly, your removal will be effective upon your receipt of this letter.

54.    On or about **March 16, 2017**, the Plaintiff filed her appeal before the Board.

55.    On **March 21, 2017**, Mr. Ebert posted a letter to the Plaintiff informing her

that the Defendant's investigation of Plaintiff's complaint of discrimination against the

Defendant was not completed within the mandated 180 days pursuant to *CFR § 1614.108(g)*. Mr. Ebert informed the Plaintiff that her complaint was ripe and she could file requesting a hearing before the Commission.

56. On April 19, 2017, Plaintiff formally requested a hearing before an EEOC Administrative Law Judge ("ALJ") when she did not timely receive the Defendant's ROI as mandated by *29 CFR § 1614.108(e)*:

> The Defendant shall complete its investigation within 180 days of the date of filing of an individual complaint or within the time period contained in an order from the Office of Federal Operations on an appeal from a dismissal pursuant to *§1614.107. See also Truman v. Speer, Secretary Army*, EEOC Appeal No. 0120140418 (April 10, 2017).

57. On **September 5, 2017**, the Board heard the Plaintiff's appeal.

58. On or about October 10, 2017, the Board's ALJ entered her Initial Decision ("ID") affirming the Plaintiff's removal.

59. On or about November 14, 2017, the Plaintiff filed her Petition for Review (PFR) on the ALJ's October 10, 2017, ID.

60. On or about January 24, 2024, the Board issued its FO upholding the ALJ's ID of October 10, 2017.

## F. *Claims of Discrimination*

61. Paragraphs 1 through 60 are hereby incorporated directly, indirectly, and/or by implication where necessary in the reading and interpretations of the following allegations:

## Count 1
## Gender Discrimination Against the Plaintiff

62.    The Plaintiff is a member of a protected class—Mexican American female, over the age of 40 years with over 14 years experience with the Defendant as a CBPO and was summarily removed from her federal career as a CBPO.  The Plaintiff was removed as being unfit for duty.  While male CBPOs with OJIs were accommodated and allowed to continue their careers as CBPOs, notwithstanding their OJIs.  The Plaintiff was qualified for her position as a CBPO.  The Defendant claims that the Plaintiff was removed from her federal career due to her inability to perform her duties as CBPO due to her OJIs. The Defendant replaced the Plaintiff with a male employee.  Moreover, male CBPOs similarly situated were treated more favorably.

## Count 2
## Age Discrimination Against the Plaintiff

63.    The Plaintiff is a member of a protected class—Mexican American female, over the age of 40 years with over 14 years experience with the Defendant as a CBPO who was summarily removed from her federal career as a CBPO due to her age being over 40 years old and suffered an OJI; while younger male CBPOs, who suffered OJI are given greater opportunity to remain as CBPOs.  The Plaintiff was removed as being unfit for duty.  While younger CBPOs with OJIs were accommodated and allowed to continue their careers as CBPOs, notwithstanding their OJIs or other medical conditions.  The record establishes that the Plaintiff was qualified for her position as a CBPO.  The Defendant alleges that the Plaintiff was removed from her federal career due to her inability to perform her duties as a CBPO due to her OJIs.  While the Defendant provided

younger male CBPOs greater opportunity by reassigning the younger male CBPOs who

sustained OJIs to administrative jobs so they could keep their careers with the Defendant.

The Defendant replaced the Plaintiff with a younger male employee.  Effectively,

younger male CBPOs similarly situated were treated more favorably than the Plaintiff.

### Count 3
### Disability Discrimination Against the Plaintiff

64.    The Defendant discriminated against the Plaintiff due to her disability by failing to

accommodate her.  After the Plaintiff suffered several OJIs, the Defendant treated the

Plaintiff as a disabled individual.  The Plaintiff's disability and its consequential

limitations were known by the Defendant.  The Defendant failed to reasonably

accommodate the Plaintiff's disability.  The Plaintiff requested an accommodation to a

mission support position whether in or out of Eagle Pass.  Which the Defendant

intentionally refused to consider nor attempted to place the Plaintiff in accommodated

position.

65.    The record establishes that CBPO Cesar R. Villasenor, suffers from Leukemia and

was out of work in 2020 for two months.  In 2022 CBPO Villasenor was on sick leave

and/or annual leave for ten and one-half months.  In 2023, CBPO Villasenor was out for

over 10 months on either sick or annual leave.  CBPO Villasenor "returned to work" in

October 2023; however, the Defendant has CBPO Villasenor in the "back office" away

from other CBPOs and not working the POE.  IE, CBPO Villasenor is being fully

accommodated.  The Defendant intentionally refused to provide similar accommodations

to the Plaintiff due to her OJIs, gender and her age.

66.    CBPO Tyler Hewett has been suffering from a drinking problem for

approximately seven years.  The Defendant has accommodated CBPO Hewett by placing him in "timeout" only because he engaged the Defendant's Employee Assistance Program due to his drinking problem.

Effectively, the Plaintiff was not allowed similar accommodations due to her OJI, age and gender.

## G. *Demand for Jury Trial*

67.    Paragraphs 1 through 66 are hereby incorporated directly, indirectly, and/or by implication where necessary in the reading and interpretations of the following allegations:

68.    The Plaintiff respectfully requests a jury trial.

## H. *Remedies*

69.    Paragraphs 1 through 68 are hereby incorporated directly, indirectly and/or by implication where necessary in the reading and interpretation of the following allegation(s):

   a.    Three hundred thousand dollars ($300,000.00) for compensatory, emotional and physical distress;

   b.    any and all equitable damages including back pay, front pay and any other compensatory damages;

   c.    punitive damages;

   d.    attorney's fees; and,

   e.    any and all remedies at law and in equity found to be just and owing.

                              Respectfully submitted,

                              /s/Lorenzo W. Tijerina

23

Lorenzo W. Tijerina, Attorney for
Plaintiff Rosa I. Arellano
Local Address: 1911 Guadalupe
San Antonio, Texas 78207
Telephone No. (210) 231-0112
Facsimile No. (210) 212-7215
Email Address: tasesq@msn.com